**Original filed 9/26/06**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JULIUS ROY BRAGG, | ) | No. C 02-3908 JF (PR) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANTS' |
| | ) | MOTION TO DISMISS, GRANTING |
| vs. | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT, DENYING |
| R.W. RUSSELL, Et al., | ) | PLAINTIFF'S CROSS-MOTION FOR |
| | ) | SUMMARY JUDGMENT, AND |
| Defendants. | ) | ADDRESSING PENDING MOTIONS |
| | ) | |

(Docket Nos. 30, 36, 38, 40, 42, 44)

Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint under 42

U.S.C. § 1983, which the Court dismissed with leave to amend. Plaintiff then filed an

amended complaint, and the Court ordered service of Plaintiff's claims against state

prison employees for the use of excessive force, the failure to provide procedural

protections at a disciplinary hearing, and deliberate indifference to Plaintiff's serious

medical needs. Defendants have filed a motion for summary judgment with respect to all

claims and a motion to dismiss the medical claim as unexhausted. Plaintiff has filed an

opposition to Defendants' motions and a cross-motion for summary judgment.

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1  Defendants have filed a reply.  This order addresses the dispositive motions as well as

2  Plaintiff's pending procedural motions.

3                                    **BACKGROUND**

4        Plaintiff raises three claims for relief.  In the first claim he alleges that on May 25,

5  2001, while he was being held at San Quentin State Prison (SQSP) on a lay-over from

6  Pelican Bay State Prison (PBSP) en route to a court appearance, Defendant Russell, the

7  SQSP Receiving & Release officer, used excessive force against him.

8        In the second claim Plaintiff alleges that on September 5, 2001 Defendant

9  Carmichael, a PBSP hearing officer, found him guilty of battery on Defendant Russell at

10 a disciplinary hearing which did not meet the requirements of due process.  As a result,

11 Plaintiff was sentenced to a term of three years in the Segregated Housing Unit (SHU).

12 Plaintiff also alleges that Defendant Schwartz, an associate warden at PBSP, wrongly

13 denied his administrative appeal of the hearing.

14       In the third claim Plaintiff alleges that Defendant McLoughlin – a dental assistant

15 at PBSP, Defendant Spencer – a dentist at PBSP, and Defendant Winslow – the Health

16 Care Manager at PBSP, acted with deliberate indifference to his serious medical needs

17 from April through July of 2003 by failing to provide him with adequate dental care.

18                                    **DISCUSSION**

19 A.    Standard of Review

20       Summary judgment is proper where the pleadings, discovery and affidavits

21 demonstrate that there is "no genuine issue as to any material fact and that the moving

22 party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are

23 those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477

24 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient

25 evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

26       The party moving for summary judgment bears the initial burden of identifying

27 those portions of the pleadings, discovery and affidavits which demonstrate the absence

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1   of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).

2   Where the moving party will have the burden of proof on an issue at trial, it must

3   affirmatively demonstrate that no reasonable trier of fact could find other than for the

4   moving party.  But on an issue for which the opposing party will have the burden of proof

5   at trial, the moving party need only point out "that there is an absence of evidence to

6   support the nonmoving party's case."  Id. at 325.

7        Once the moving party meets its initial burden, the nonmoving party must go

8   beyond the pleadings and, by its' own affidavits or discovery, "set forth specific facts

9   showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving

10  party has the burden of identifying, with reasonable particularity, the evidence that

11  precludes summary judgment.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  If

12  the nonmoving party fails to make this showing, "the moving party is entitled to judgment

13  as a matter of law."  Celotex, 477 U.S. at 323.

14       When the parties file cross-motions for summary judgment, the district court must

15  consider all of the evidence submitted in support of both motions to evaluate whether a

16  genuine issue of material fact exists precluding summary judgment for either party.  The

17  Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1135

18  (9th Cir. 2001).

19  B.   Excessive Force Claim

20       1.   Facts

21       Plaintiff alleges that Defendant Russell used excessive force against him.

22  The facts pertinent to this claim are taken from the verified pleadings, declarations and

23  supporting documents submitted by the parties in support of and in opposition to

24  Defendants Russell's motion for summary judgment and Plaintiff's cross-motion for

25  summary judgment.

26       Plaintiff's Facts:

27       On May 24, 2001 Plaintiff traveled on a prison bus from PBSP for a court

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1  appearance.  En route, there was an overnight layover at SQSP.  Plaintiff alleges that

2  when the bus arrived at SQSP, Defendant Russell, the Receiving & Release (R&R)

3  officer at SQSP, was yelling insults at and shoving the inmates getting off the bus,

4  although Plaintiff was not shoved.

5      The next morning Plaintiff arrived at R&R to board the bus.  He noticed that

6  Defendant Russell was handling prisoners roughly and shoving them.  Plaintiff was

7  placed in a padlocked cell until it was his turn to board the bus.  When his turn came, an

8  officer told Defendant Russell that Plaintiff needed to be strip-searched and handcuffed

9  while still in the cell because he was from the SHU at PBSP.  However, Defendant

10  Russell responded in strong terms that he didn't care, and said that he would "beat

11  [Plaintiff's] skinny ass if he give me any lip."  Defendant Russell opened the cell door,

12  which Plaintiff exited without restraints.  Defendant Russell then asked Plaintiff what he

13  was holding in his hands.  Plaintiff explained that it was a pair of thermal underwear

14  which the bus driver had allowed him to bring because the cell windows were missing at

15  the prison where Plaintiff was headed.  Defendant Russell swore at Plaintiff and told him

16  to "face the screen."  Defendant Russell then said that he was going to throw the thermal

17  underwear away.  Plaintiff asked him to confirm with the bus driver that he was allowed

18  to have the thermal underwear.  Instead, Defendant Russell threw the thermal underwear

19  in the trash.

20      Plaintiff, who was three feet away from the cell unit door, then took one step

21  toward the door and yelled to the bus driver.  At that point, Defendant Russell grabbed

22  Plaintiff by the neck violently and gave him a hard push, which caused Plaintiff to fall

23  outside of the door frame.  Seven or eight other officers then jumped on Plaintiff.

24  Defendant Russell sat on top of Plaintiff with his knee in Plaintiff's back, holding

25  Plaintiff's head and violently pulling it back and forth.  Before he let Plaintiff up,

26  Defendant Russell stomped on Plaintiff's right hand.  As a result of Defendant Russell's

27  actions, Plaintiff suffered a gash on his right hand, for which he received a butterfly stitch

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

4

1   and band-aids, and a large bump on his head.

2        Plaintiff filed a staff complaint requesting an investigation into Defendant

3   Russell's behavior.  The official complaint process was initiated by personnel at SQSP by

4   way of a staff misconduct review sheet dated June 8, 2001.  (Pl.'s Ex. B-108.)  On June

5   20, 2002 Plaintiff received notice from E. DeRusha, a Correctional Counselor I, that he

6   had spoken with a sergeant at SQSP who had told him that the "investigation should not

7   have taken so long," and that it had been completed "2 months ago," but Plaintiff had not

8   been notified.  (Pl.'s Ex. E-200.)  DeRusha provided Plaintiff with a copy of the

9   memorandum from the Employee Relations Officer at SQSP which stated that Plaintiff's

10  complaint that "a San Quentin staff member was less than professional when dealing with

11  you" had been sustained, that is, that the investigation had found "a preponderance of

12  evidence to prove the allegations[] made in the complaint," and that appropriate

13  administrative action had been taken.  (Pl.'s Ex. C).

14       Defendant's Facts:

15       On May 25, 2001, at approximately 11:15 a.m., Defendant Russell was working

16  his assignment as a R&R officer at SQSP.  Along with another officer he was loading

17  inmates onto a bus, designated as CDC Bus Schedule "T."

18       Defendant Russell escorted Plaintiff from the holding cell located at the front of

19  the R&R area to the search area, near the unit's front door.  He attempted to conduct an

20  unclothed body search of Plaintiff.  To do this, he ordered Plaintiff to "strip out," meaning

21  to remove his clothing.  Plaintiff did not comply with this direct order.  Instead, Plaintiff

22  turned and fled out the front door of R&R.

23       To prevent Plaintiff from fleeing to the outside area (the lower yard at SQSP),

24  Defendant Russell attempted to place his left hand on Plaintiff's left elbow.  In response,

25  Plaintiff slapped Defendant Russell's left hand away with his right hand.  Plaintiff ran

26  away from Defendant Russell, down nearby steps, and turned toward Defendant Russell.

27  Plaintiff swung his right closed fist at Defendant Russell's chest area, but failed to make

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1   contact.  In so doing, however, Plaintiff turned and exposed his right back and shoulder

2   area to Defendant Russell.

3        Concerned with his own safety and the safety of the prison, Defendant Russell

4   placed his right hand on Plaintiff's right arm and placed his left hand on Plaintiff's back

5   and shoulder area.  Using both hands, Defendant Russell pushed Plaintiff to the ground to

6   subdue him and to prevent him from attempting to strike Defendant Russell.  At no time

7   did Defendant Russell strike Plaintiff with a closed fist.

8        Once Plaintiff was on the ground, several other officers arrived to assist with

9   restraining Plaintiff and to secure him in handcuffs.  Plaintiff ceased struggling and

10  Defendant Russell placed him in handcuffs.  Once Plaintiff was in handcuffs, Defendant

11  Russell assisted him to a standing position and released him to another officer who

12  escorted him to a holding cell.

13       Plaintiff was taken to the infirmary and seen by an MTA, who wrote on the

14  medical report that, "Inmate has lacerations on knuckles of middle two fingers of L hand.

15  No other injuries." (Defs.' Ex. A, AGO 0006.)  According to the report, the injuries were

16  cleaned and dressed with hydrogen peroxide and band-aids, and Plaintiff was released

17  from the infirmary.  (Id.)

18       2.   Applicable Law

19       The treatment a prisoner receives in prison and the conditions under which he is

20  confined are subject to scrutiny under the Eighth Amendment.  Helling v. McKinney, 509

21  U.S. 25, 31 (1993).  "After incarceration, only the unnecessary and wanton infliction of

22  pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."

23  Whitley v. Albers, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation

24  marks and citation omitted).

25       "[W]henever prison officials stand accused of using excessive physical force in

26  violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is . . .

27  whether force was applied in a good-faith effort to maintain or restore discipline, or

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK
6

1   maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7

2   (1992); see Whitley, 475 U.S. at 320-21; Jeffers v. Gomez, 267 F.3d 895, 912-13 (9th Cir.

3   2001).  In determining the nature of the use of force, a court may evaluate the need for

4   application of force, the relationship between that need and the amount of force used, the

5   extent of any injury inflicted, the threat reasonably perceived by the responsible officials,

6   and any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at

7   7.

8        It is not necessary that a prisoner have suffered significant injury in order to

9   prevail on an Eighth Amendment claim for use of excessive force.  Id. at 9.

10  Contemporary standards of decency are always violated when prison officials maliciously

11  and sadistically use force to cause harm whether or not significant injury is evident.  Id.

12  However, the scope of the Eighth Amendment is not without limitation: The Eighth

13  Amendment necessarily excludes from constitutional recognition de minimis uses of

14  force, provided that the use of force is not of a sort repugnant to the conscience of

15  mankind.  Id. at 9-10.  Although a prisoner may believe that his rights were violated, "not

16  every push or shove . . . violates [his] constitutional rights."  Id. at 9 (internal quotation

17  marks and citation omitted).

18       3.   Analysis

19       The Court finds that Plaintiff has raised a genuine issue of triable fact regarding

20  whether Defendant Russell used excessive force against him in violation of the Eighth

21  Amendment.  As conceded by Defendant, it is undisputed that force was used.  The

22  question then becomes whether the use of force was malicious and sadistic.  Applying the

23  criteria set out in Hudson, the material facts relevant to such a determination are clearly in

24  dispute.  Plaintiff alleges that Defendant Russell knew there was no need to use force but

25  nevertheless used an amount of force intended to cause injury.  Defendant Russell alleges

26  that Plaintiff disobeyed a direct order, attempted to flee, and resisted attempts to be

27  restrained, thereby requiring Defendant Russell to use a sufficient amount of force to

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

7

1    subdue and handcuff Plaintiff.  Plaintiff alleges that he suffered more than de minimis

2    injury as a result of the use of force.  Defendant Russell claims Plaintiff suffered nothing

3    more than minor lacerations.  In short, Plaintiff alleges facts which, if found to be true,

4    show that Defendant Russell applied force maliciously and sadistically for the very

5    purpose of causing harm, and Defendant Russell alleges facts which, if found to be true,

6    show that he applied force in a good-faith effort to maintain or restore discipline.

7    Because there are material facts in dispute regarding the intent with which force was

8    applied, neither Defendant Russell nor Plaintiff is entitled to judgment as a matter of law

9    on this claim.

10              4.    Qualified Immunity

11         Defendant Russell argues that even if the underlying facts are in dispute as to

12   whether he acted with the requisite intent to establish an Eighth Amendment violation, he

13   is entitled to qualified immunity.

14         The defense of qualified immunity protects "government officials . . . from liability

15   for civil damages insofar as their conduct does not violate clearly established statutory or

16   constitutional rights of which a reasonable person would have known."  Harlow v.

17   Fitzgerald, 457 U.S. 800, 818 (1982).  Claims of qualified immunity require a two-step

18   analysis.  First, the court must consider whether the fact alleged, taken in the light most

19   favorable to the party asserting the injury, show that the defendant's conduct violated a

20   constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the allegations do not

21   establish the violation of a constitutional right, there is no necessity for further inquiries

22   concerning qualified immunity.  Id.  If the allegations could make out a constitutional

23   violation, however, the court must then ask whether the right was clearly established –

24   that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in

25   the situation he confronted."  Id. at 202.  If an officer makes a reasonable mistake as to

26   what the law requires, the officer is entitled to qualified immunity.  Id. at 205.

27         The qualified immunity inquiry is separate from the constitutional inquiry for a

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1  claimed violation of the Eighth Amendment.  Marquez v. Gutierrez, 322 F.3d 689, 692-93

2  (9th Cir. 2003) (citing Estate of Ford v. Caden, 301 F.3d 1043, 1053 (9th Cir. 2002)

3  (extending Saucier to Eighth Amendment claims)).  Thus, qualified immunity is not

4  precluded where a triable issue of fact exists regarding the defendant's underlying intent.

5  Id.  In excessive force cases, qualified immunity operates to protect officers from the

6  sometimes "hazy border between excessive and acceptable force," Saucier, 533 U.S. at

7  206, and will apply if the officer had a mistaken but reasonable belief about the amount of

8  force that the law allowed in the situation he confronted, id. at 207-08.  See, e.g.,

9  Marquez, 332 F.3d at 693 (prison guard entitled to qualified immunity where belief in

10  need for use of force was reasonable, even if it was mistaken).  The qualified immunity

11  analysis does not take "20/20 vision of hindsight" into account, but rather gives deference

12  to the judgment of reasonable officers at the time of the occurrence.  Graham v. Connor,

13  490 U.S. 386, 396 (1989).

14       With respect to the first prong of the qualified immunity analysis, the facts which

15  Plaintiff alleges, when viewed in the light most favorable to him, could show that

16  Defendant Russell's conduct violated his right under the Eighth Amendment to be free

17  from the use of excessive force, as discussed above.

18       The Court next looks to whether this right was clearly established at the time of the

19  confrontation.  It was.  The law defining the contours of the right was first established in

20  Whitley v. Albers, where the Supreme Court recognized that security risks in the prison

21  setting create a potential for harm to prison staff and inmates alike, and that an additional

22  possibility for harm is created for inmates against whom force might be used to quell such

23  risks.  475 U.S. at 320.  Mindful of the responsibility of prison administrators to avert

24  security risks, ensure the safety of prison staff, and take reasonable measures to guarantee

25  the safety of inmates, the Court held that any standard for determining whether excessive

26  force had been used must "adequately capture the importance of such competing

27  obligations, or convey the appropriate hesitancy to critique in hindsight decisions

28  Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1   necessarily made in haste, under pressure, and frequently without the luxury of a second

2   chance." Id.  The Court concluded that "the question whether [a security] measure taken

3   inflicted unnecessary and wanton pain and suffering ultimately turns on whether force

4   was applied in a good faith effort to maintain or restore discipline or maliciously and

5   sadistically for the very purpose of causing harm." Id. at 320-21 (internal quotation

6   marks and citation omitted).

7        In light of the clearly established law in existence at the time of Defendant

8   Russell's actions, the sole remaining question is whether it would be clear to a reasonable

9   officer standing in his position that his conduct was unlawful in the situation he

10  confronted?  Accepting Plaintiff's facts as true, see Martin v. City of Oceanside, 360 F.3d

11  1078, 1082 (9th Cir. 2004), the Court concludes that it would not be clear to a reasonable

12  officer in Defendant Russell's situation that his conduct was unlawful.

13       First, even if he was mistaken about Plaintiff's intent, it would not be unreasonable

14  for an officer in Defendant Russell's position to believe that by taking a step toward the

15  door Plaintiff was attempting to leave the area without authorization.

16       Second, a reasonable officer in Defendant Russell's position could have concluded

17  that he needed to use force in order to prevent Plaintiff from doing so.  Defendant Russell

18  knew that Plaintiff was not handcuffed (as he should have been) and that he was a

19  maximum security prisoner from the SHU at PBSP, the most restrictive of prison

20  facilities.  Because Plaintiff and Defendant Russell had just engaged in a somewhat

21  heated exchange pertaining to Defendant Russell's authority to throw out Plaintiff's

22  thermal underwear, Defendant Russell also could have reasonably concluded that Plaintiff

23  might not respond to a verbal command to stop.  The security risk posed by a non-

24  handcuffed inmate free on the prison yard thus would lead an officer in Defendant

25  Russell's position to reasonably believe that he must immediately act to restrain Plaintiff,

26  and that pushing Plaintiff to the ground was the fastest and safest way to do so.

27       Third, it was reasonable for Defendant Russell to conclude that even after pushing

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1    Plaintiff down he needed to physically restrain Plaintiff until he was handcuffed, and that

2    the safest and most effective way to ensure this was by sitting on Plaintiff with his knee in

3    Plaintiff's back.

4           Finally, although Defendant Russell's conduct of violently pulling Plaintiff's head

5    back and forth and stomping on Plaintiff's hand might seem excessive in hindsight, a

6    reasonable officer in Defendant Russell's position could have concluded that in order to

7    keep Plaintiff on the ground until he was handcuffed the use of such force was necessary.

8    Cf. Watts v. McKinney, 394 F.3d 710, 711-12 (9th Cir. 2004) (gratuitously kicking in the

9    groin an inmate who was handcuffed and lying on the cell floor was conduct which no

10   reasonable person could believe was constitutional).

11          In sum, based on the facts as alleged by Plaintiff, it was not unreasonable for

12   Defendant Russell to believe, even if mistakenly, that Plaintiff was trying to flee and,

13   faced with the circumstance of having an non-handcuffed maximum security SHU inmate

14   running free on the yard, to use an amount of force which, according to Plaintiff, resulted

15   in a gash on his right hand and a bump on his head.  Accordingly, qualified immunity is

16   GRANTED to Defendant Russell.

17   C.    Disciplinary Hearing Claim

18          1.    Facts

19          Plaintiff claims that his right to due process was violated by a disciplinary hearing

20   at which he was found guilty in absentia after his request to postpone the hearing was

21   denied.  He also claims that his administrative appeal of this matter was wrongly denied.

22          The following facts are undisputed unless otherwise noted.

23          On May 25, 2001 a rules violation report (RVR) was issued against Plaintiff for

24   battery on a peace officer, based on the events which had transpired between Plaintiff and

25   Defendant Russell.  On July 20, 2001 the RVR was referred to the District Attorney's

26   office for a determination whether criminal charges would be brought.  On July 31, 2001

27   the Marin County District Attorney provided written notice that Plaintiff would not be

28
     Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
     Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
     P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

prosecuted for the May 25, 2001 incident.  Defendants assert that Plaintiff was notified of the District Attorney's decision on July 31, 2001 as well, and Plaintiff does not dispute this fact.

On August 30, 2001 Plaintiff received his copy of the RVR.  Under CCR § 3320, a hearing must be held within thirty days from the date the inmate receives his copy of the RVR.  Plaintiff claims that upon receiving the RVR he told the officer who gave it to him that he wanted to postpone the hearing.  Although the grounds upon which he asked for postponement are not entirely clear from the content of Plaintiff's pleadings, the copies of his administrative appeals which he has attached as exhibits show that he apparently sought postponement both because he was waiting for notification on the status of the referral to the District Attorney's Office and because he was waiting for a report from the Investigative Services Unit, witness statements, and an answer from the Federal Bureau of Investigation regarding his allegations that he had been assaulted by Defendant Russell.

It is undisputed that Plaintiff did not sign the section on the RVR form requesting postponement of the hearing pursuant to California Code of Regulations, title 15 (CCR) section 3316(c), which provides that an inmate may request postponement of his disciplinary hearing pending the outcome of a referral to the District Attorney's Office by signing and dating the RVR form.  A disciplinary hearing postponed under this section must be held within thirty days after written notice is received that the prosecuting authority does not intend to prosecute.  Id. § 3316(c)(1)(C).  The form itself shows that the box for requesting a postponement is checked, but in the signature section it says "refused to sign." (Defs.' Ex. A, AGO 0004.)  The reason why Plaintiff's signature isn't on the form is not clear.  According to Plaintiff's amended complaint, the officer wrote in "refused to sign" after telling Plaintiff that it wasn't necessary for him to sign the form at that point if the reason for postponement was because he was waiting for an answer from the District Attorney's Office.  (Compl. at 3-C.)  In his administrative appeal on the issue

1   Plaintiff stated slightly different facts, saying that the officer checked the appropriate

2   boxes for postponement and assignment of an investigative employee after telling

3   Plaintiff he could postpone the hearing, but Plaintiff then told the officer that, "I would

4   sign it at the time of the assignment[.] [S]he said okay but she would put down I refused

5   to sign until that time."  (Defs.' Ex. A, AGO 0021.)  In another variation, in his opposition

6   to Defendants' motion for summary judgment Plaintiff states that he did not find out that

7   "refused to sign" had been written on the form until some time after the fact.  (Opp. at 5.)

8       It is undisputed that on September 5, 2001 Plaintiff was found guilty of the RVR at

9   a disciplinary hearing which he did not attend.  According to Plaintiff, while he was

10  exercising in his cell Defendant Carmichael came to the gate outside of the cell and told

11  him that he wanted Plaintiff to attend the disciplinary hearing on the RVR.  Plaintiff

12  responded that he had postponed the hearing.  Defendant Carmichael acknowledged that

13  Plaintiff had checked the box on the RVR form asking for postponement but stated that

14  he hadn't signed the form and therefore the hearing had to go forward.  In his amended

15  complaint and his opposition to Defendants' motion for summary judgment, Plaintiff

16  states that he told Defendant Carmichael that he needed more time to collect information

17  from investigative reports and witnesses.  Defendant Carmichael then decided that

18  Plaintiff couldn't go to the hearing.  In his administrative appeal on the issue Plaintiff put

19  the facts a bit differently, stating that he told Defendant Carmichael that he was waiting

20  for the District Attorney's Office to finish its investigation of the charges against him, that

21  the question whether he had signed the RVR form never came up, and that Defendant

22  Carmichael tried to "force" Plaintiff to have the hearing.  When Defendant Carmichael

23  became "loud and standoffish" Plaintiff states "I said I wanted to postpone and that I was

24  going back to the cell because I didn't want any problems."  (Defs.' Ex. A, AGO 0021.)

25  In both scenarios Plaintiff returned to his cell and Defendant Carmichael found Plaintiff

26  guilty of the RVR in absentia.  As punishment for the RVR Plaintiff was sentenced to an

27  additional three years in the SHU.

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK
13

1    Plaintiff appealed the finding of guilt on the ground that the hearing should not

2 have gone forward because he had requested postponement.  The appeal was denied

3 because Plaintiff's refusal to sign the request for postponement rendered it invalid, and

4 also because the reason for the postponement request – waiting to hear back from the

5 District Attorney's Office – was moot in light of the July 31, 2001 notice declining to

6 prosecute.

7    2.    Applicable Law

8    Prisoners retain their right to due process subject to the restrictions imposed by the

9 nature of the penal system.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Prison

10 disciplinary proceedings are not part of a criminal prosecution and the full panoply of

11 rights due a defendant in such proceedings does not apply.  See id.  But the Due Process

12 Clause requires certain minimum procedural protections where serious rules violations

13 are alleged, the power of prison officials to impose sanctions is narrowly restricted by

14 state statute or regulations, and the sanctions are severe.  See id. at 556-57, 571-72 n.19.

15    Wolff established five constitutionally-mandated procedural requirements for

16 disciplinary proceedings.  First, "written notice of the charges must be given to the

17 disciplinary-action defendant in order to inform him of the charges and to enable him to

18 marshal the facts and prepare a defense."  Id. at 564.  Second, "at least a brief period of

19 time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for

20 the appearance before the [disciplinary committee]."  Id.  Third, "there must be a 'written

21 statement by the factfinders as to the evidence relied on and reasons' for the disciplinary

22 action."  Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).  Fourth, "the

23 inmate facing disciplinary proceedings should be allowed to call witnesses and present

24 documentary evidence in his defense when permitting him to do so will not be unduly

25 hazardous to institutional safety or correctional goals."  Id. at 566.  And fifth, "[w]here an

26 illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely

27 that the inmate will be able to collect and present the evidence necessary for an adequate

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1   comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to

2   have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the

3   staff." Id. at 570.

4       In order to meet the minimum requirements of procedural due process outlined in

5   Wolff, the findings of a prison disciplinary board also must be supported by some

6   evidence.  Superintendent v. Hill, 472 U.S. 445, 454 (1985).  The relevant question is

7   whether there is any evidence in the record that could support the conclusion reached.

8   See id.

9       The Due Process Clause requires only that prisoners be afforded those procedures

10  mandated by Wolff and its progeny; it does not require that prisons comply with their

11  own, more generous procedures.  See Walker v. Sumner, 14 F.3d 1415, 1419-20  (9th Cir.

12  1994).  A prisoner's right to due process is violated "only if he [is] not provided with

13  process sufficient to meet the Wolff standard." Id.

14      3.    Analysis

15          a.    Protected liberty interest

16      The placement of a California prisoner in the SHU as a result of disciplinary

17  proceedings is subject to Wolff's procedural protections if (1) state statutes or regulations

18  narrowly restrict the power of prison officials to impose the punishment, and (2) the

19  liberty interest implicated by the punishment is one of "real substance." See Sandin v.

20  Conner, 515 U.S. 472, 477-87 (1995).

21      California's regulations concerning discipline provide explicit standards that

22  narrowly fetter official discretion.  Under these regulations, officials must find that a

23  preponderance of the evidence substantiates the charge before guilt may be found and

24  punishment assessed.  Absent such a finding the inmate may not be placed in isolation nor

25  segregation, nor assessed good-time credits.  See also CCR § 3320(a) (requiring notice);

26  id. § 3320(b) (requiring hearing).  Because a prisoner may not be disciplined unless

27  explicit substantive and procedural requirements are met, the disciplinary standards and

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

15

1  procedures meet the first prong of the Sandin test.  See Walker, 14 F.3d at 1419 (finding

2  Nevada regulations, which are similar to California's, create liberty interest).

3      A liberty interest of "real substance" under the second prong of the Sandin test will

4  generally be limited to freedom from restraint that imposes "atypical and significant

5  hardship on the inmate in relation to the ordinary incidents of prison life," Sandin, 515

6  U.S. at 484, or from state action that "will inevitably affect the duration of [a] sentence,"

7  id. at 487.  Because Plaintiff was not assessed a forfeiture of time credits as a result of the

8  disciplinary hearing, the question here is whether the disciplinary sentence of three years

9  in the highly-restricted PBSP SHU qualifies as an atypical and significant hardship.

10      Typically, placement in segregated housing in and of itself does not implicate a

11  protected liberty interest.  See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003);

12  see, e.g., Sandin, 515 U.S. at 485-86 (inmate's thirty-day placement in disciplinary

13  segregation, where conditions mirrored conditions imposed upon inmates in

14  administrative segregation and protective custody, did not result in type of atypical,

15  significant deprivation for which state might create liberty interest); Mujahid v. Meyer, 59

16  F.3d 931, 932 (9th Cir. 1995) (under Sandin no liberty interest when inmate placed in

17  disciplinary segregation for fourteen days).  However, the circumstances of a particular

18  case may sometimes result in segregation working an atypical and significant hardship on

19  an inmate so that it does implicate a protected liberty interest.  See, e.g., Wilkinson v.

20  Austin, 125 S. Ct. 2384, 2394-95 ( 2005) (indefinite placement in Ohio's "supermax"

21  facility, where inmates are not eligible for parole consideration, imposes an "atypical and

22  significant hardship within the correctional context"); Serrano, 345 F.3d at 1078-79

23  (protected liberty interest implicated when wheelchair-assisted inmate was put in a SHU

24  not designed for disabled persons, because the placement forced him to endure a situation

25  far worse than a non-disabled person sent to the SHU would have to face).

26      Based on the record in the present case, the Court cannot find as a matter of law

27  that Plaintiff's placement in the PBSP SHU for three years did not amount to an atypical

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

and significant hardship.  However, even if the Court assumes that a protected liberty

interest was implicated under these circumstances, the Court also finds that Plaintiff's

right to due process was not violated.

b.   Due process

Plaintiff claims that Defendant Carmichael's refusal to allow him to postpone his

hearing until he was able to collect documentation and interview witnesses in support of

his defense violated his right to a fair hearing.

First, Plaintiff claims he was entitled to postponement until the question whether

the District Attorney's Office would seek criminal prosecution was resolved.  This

argument is without merit, however, because it is undisputed that the question was

resolved as of July 31, 2001, when the prison and Plaintiff were notified that the District

Attorney had declined to prosecute.  Thus, whether Plaintiff refused to sign the RVR form

or not, seeking postponement of the hearing on this ground was a moot point by the time

he was called to attend his disciplinary hearing on September 5, 2001.  Accordingly,

Defendant Carmichael properly denied the request.

Plaintiff next claims that he was entitled to a postponement until he had a chance

to interview witnesses.  However, he does not allege that he identified these witnesses for

Defendant Carmichael, explained what steps he had taken – or would need to take – to

obtain their testimony, or described the testimony that he anticipated they would give.  He

also does not provide such information here.  While Wolff allows an inmate a limited

right to call witnesses, it is illogical to argue that the right is implicated whenever a

prisoner asserts that he intends to call unidentified witnesses to present undescribed

testimony and does not explain how and when he intends to obtain their testimony.

Accordingly, Defendant Carmichael's refusal to postpone the hearing so that Plaintiff

could obtain witness testimony did not violate the mandates of Wolff.

Plaintiff claims that the hearing should have been postponed until he received the

results of the staff misconduct investigation he had initiated with respect to Defendant

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

Russell.[1]  As discussed above in the section of this order addressing Plaintiff's excessive force claim, Plaintiff filed a staff complaint requesting an investigation into Defendant Russell's behavior.  The official complaint process was initiated by personnel at SQSP by way of a staff misconduct review sheet dated June 8, 2001.  (Pl.'s Ex. B-108.)  On June 20, 2002 Plaintiff received notice from E. DeRusha, a Correctional Counselor I, that he had spoken with a sergeant at SQSP who had told him that the "investigation should not have taken so long," and that it had been completed "2 months ago," but Plaintiff had not been notified.  (Pl.'s Ex. E-200.)  DeRusha provided Plaintiff with a copy of the memorandum from the Employee Relations Officer at SQSP which stated that Plaintiff's complaint that "a San Quentin staff member was less than professional when dealing with you" had been sustained, that is, that the investigation had found "a preponderance of evidence to prove the allegations[] made in the complaint," and that appropriate administrative action had been taken.  (Pl.'s Ex. C).

The Court finds that while the results of the investigative process might well have been of benefit to Plaintiff had they been available at the time of his disciplinary hearing, Defendant Carmichael's refusal to postpone the hearing until the investigation was concluded did not violate Plaintiff's right to due process under <u>Wolff</u>.  Although an inmate has the right under <u>Wolff</u> to present documentary evidence in support of his defense, that right is limited by correctional and institutional concerns.  <u>See Wolff</u>, 418 U.S. at 566.  A legitimate correctional concern is the prompt resolution of disciplinary charges.  Such promptness not only encourages the confidence and cooperation of inmates by ensuring that they do not linger under the specter of unresolved allegations and that they have the opportunity to mount a defense before memories and witnesses fade, it also places a premium on prison administrators' need to punish troublemakers

---

[1]Plaintiff also claims that he was awaiting the results of a complaint he had filed with the Federal Bureau of Investigation.  However, he has provided no information at all regarding when he filed this complaint or its resolution.  Accordingly, the Court finds that his claim of an alleged right to postponement on this ground is entirely unsubstantiated and without merit.

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

18

1   without undue delay.  Thus, while <u>Wolff</u> sanctions the presentation of evidence in an

2   inmate's defense, it does not require that inmates be given unlimited time to gather that

3   evidence.

4           This is not a case where Plaintiff requested a postponement in order to gather

5   documentary evidence which he knew was available but needed more time to obtain (such

6   as gathering already-prepared reports or accessing information already in existence in

7   prison files).  Rather, he knew only that an investigation into his complaint of staff

8   misconduct had been initiated at SQSP on June 8, 2001.  When the investigation would

9   be concluded was wholly outside of Plaintiff's control.  And, as the facts show, the

10  investigation was not concluded until some time around April 2002 – approximately

11  seven months after Plaintiff asked for postponement – and Plaintiff did not learn of the

12  results until June 20, 2002.  Under these facts, Defendant Carmichael's refusal to allow

13  postponement of the hearing until the investigation was completed was not a violation of

14  Plaintiff's right to present evidence under <u>Wolff</u>.

15          Finally, Plaintiff claims that because the disciplinary  hearing was held <u>in absentia</u>

16  Defendant Carmichael's finding of guilt cannot be upheld.  However, because Plaintiff

17  did not appear at the hearing he did not present any evidence in his defense.  Thus, the

18  only evidence before Defendant Carmichael was the report prepared by Defendant

19  Russell.  The sequence of events as alleged by Defendant Russell is set forth in detail in

20  the section of this order addressing Plaintiff's excessive force claim.  The facts are more

21  than sufficient to meet the "some evidence" standard required by <u>Superintendent v. Hill</u>,

22  472 U.S. at  454.  <u>See id</u>. (the relevant question is whether there is any evidence in the

23  record that could support the conclusion reached by the disciplinary board).

24          Accordingly, Defendant Carmichael's motion for summary judgment is

25  GRANTED, and Plaintiff's cross-motion for summary judgment is DENIED.

26                       c.      <u>Denial of administrative appeal</u>

27          Plaintiff claims that Defendant Teresa Schwartz, an associate warden at PBSP,

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1   wrongly denied his appeal of the disciplinary hearing.  A supervisor may be liable under

2   § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or

3   (2) a sufficient causal connection between the supervisor's wrongful conduct and the

4   constitutional violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir.

5   1991) (en banc) (citation omitted).  A supervisor therefore generally "is only liable for

6   constitutional violations of his subordinates if the supervisor participated in or directed

7   the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List,

8   880 F.2d 1040, 1045 (9th Cir. 1989).

9        Here, the Court has found no constitutional violation occurred with respect to

10  Plaintiff's disciplinary hearing.  Therefore, Defendant Schwartz's rejection of Plaintiff's

11  appeal did not amount to a violation of Plaintiff's constitutional rights.

12       Accordingly, Defendants Schwartz's motion for summary judgment is GRANTED,

13  and Plaintiff's cross-motion for summary judgment is DENIED.

14  D.   Dental Care Claim

15       1.   Facts

16       The following facts are undisputed unless otherwise noted.

17       On June 5, 2003 Plaintiff submitted an inmate administrative appeal (Log No.

18  PBSP -03-01578), in which he stated that "some two (2) months ago" he had submitted a

19  sick-call slip with respect to his lower left tooth, complaining that the filling had come out

20  and requesting an interview.  In the appeal he complained that no action had been taken

21  since, causing more damage to the tooth.  He also stated that he was supposed to be seen

22  for a dental "follow-up" visit to check on his tooth care and to be provided with a special

23  toothbrush.  He stated that he should not have to wait until he was in an "emergency

24  status" to receive care.  He requested a follow-up visit, that the issue of periodontal

25  disease be addressed, a "toothbrush remedy," and "dental replacements."  (Defs.' Ex. A,

26  AGO 0022.)

27       On June 13, 2003 Defendant McLoughlin, a dental assistant, responded to the

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1   appeal as follows:

2       Regarding the first action requested, you are currently listed for routine
        dental treatment as per your request [for services form] (7362) stating,
3       "filling came out, no real pain."  Regarding the second action requested, the
        currently issued toothbrush has been deemed adequate to provide daily
4       plaque removal.

5   (Id.)

6       On that same date, in response to Defendant McLoughlin's answer, Plaintiff filed a

7   formal level appeal in which we wrote:

8       Of course when I put in the dental request I had no real pain and I thought it
        important to point it out, however 2 months has gone by and thats [sic] a
9       different story.  Also I have been evaluated previously by another dentist for
        [periodontal] disease.  This person answering hasn't even examined my
10      teeth & this tooth thing isn't adequate.

11  (Id.)

12      On June 18, 2003 Defendant Spencer, a dentist, interviewed and examined

13  Plaintiff and then wrote a response to Plaintiff's formal level appeal, telling him that a

14  special toothbrush had been ordered for his periodontal disease and that he had been

15  scheduled to be seen in the dental clinic on June 19 to have his filling restored.  (Defs.'

16  Ex. A, AGO 0023.)

17      On June 19, 2003 Plaintiff received a filling for his tooth.

18      Additionally, Plaintiff alleges that at some point after Defendant McLoughlin's

19  June 13, 2003 response but before Plaintiff's June 19, 2003 dental examination, Plaintiff

20  was already at the medical clinic and asked the dentist, Dr. Hechanova if he could be seen

21  that day.  According to Plaintiff, Defendant McLouglin intervened, saying that he was

22  already on a list to be seen some other time, and Dr. Hechanova then said that Defendant

23  McLoughlin had already cleaned the tools for the day and didn't want to work on any

24  more patients.  (Pl.'s Compl. at 3-E.)

25      Plaintiff alleges that the day after his tooth was filled he spoke to Defendant

26  Spencer about getting treatment for his periodontal disease.  According to Plaintiff,

27  Defendant Spencer responded that there was no money in the budget to treat periodontal

28
Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK
21

1   disease, that once Plaintiff's tooth got loose it would just have to be extracted, and that

2   dental work other than extractions, fillings, and minor tooth cleaning was not done at

3   PBSP.  (Id. at 3-F.)

4         On July 10, 2003, in response to Defendant Spencer's June 18, 2003 answer to

5   Plaintiff's formal level appeal, Plaintiff filed a second level appeal, with the reasons stated

6   as follows:

> (1) No definite answer with respect to timely dental appointment,
> reasonable length of wait to be seen (2) Dental work which may be needed
> other than that which is offered at the institution if need be (added)
> (3) Budget which is dispensed for that purpose (if any).

(Defs.' Ex. A, AGO 0023.)

10        On July 29, 2003 Plaintiff received a second level appeal response from Defendant

11  Winslow, the Health Care Manager at PBSP, who reviewed Plaintiff's complaints of delay

12  and inadequate dental services.  Defendant Winslow noted that in response to the process

13  started by Plaintiff's June 5, 2003 appeal he had received an examination on June 18,

14  2003 and had his tooth filled on June 19, 2003, and Defendant Winslow saw no delay in

15  Plaintiff's treatment.  Defendant Winslow told Plaintiff that if he needed additional dental

16  work he should submit a request for services and he would be scheduled as soon as

17  possible based on his dental needs.  Defendant Winslow told Plaintiff that his request for

18  a budget was beyond the scope of the appeals process.  (Defs.' Ex. A, AGO 0028.)

19        On August 20, 2003 Plaintiff filed a third level appeal in which he stated that he

20  was dissatisfied with Defendant Winslow's response and sought further review because:

> The delay was when I submitted the actual medical form (CDC  7362) two
> (2) months previous which isn't disputed by Dr. Spencer's account and
> reasonable time to be seen without filling out a complaint (602 [form]) is
> what I sought.  Also an answer to the denial of specific medical care on not
> the teeth in question that was filled, but the ones requiring more extensive
> work which may or may not be able to be done on site.

25  (Pl.'s Ex. F-301.)

26        This appeal was addressed by a Director's Level Appeal Decision dated November

27  6, 2003, which found that Plaintiff had received the treatment he requested in his initial

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK
22

1    appeal, including follow-up treatment, and that the treatment was adequate and had not

2    been delayed.  (Decl. of N. Grannis in Support of Defendants' Motion to Dismiss, Ex. B.)

3        Plaintiff's medical records show that after his tooth was filled on June 19, 2003 he

4    was not seen in the dental clinic again for treatment until May 13, 2004.  (Defs.' Ex. A,

5    AGO 0034.)

6        In the present action, Plaintiff claims that Defendants McLoughlin, Spencer and

7    Winslow acted with deliberate indifference to his serious medical needs in violation of

8    the Eighth Amendment[2] because: (1) Defendant McLoughlin did not promptly respond to

9    his initial request for dental care and actively delayed his attempts to obtain treatment;

10   (2) Defendant Spencer acknowledged at his June 20, 2003 meeting with Plaintiff that

11   periodontal disease is serious and requires specialized care but he refused to allow such

12   care, employed no regular dentists for emergencies or routine dental services, did not

13   enforce rules requiring that dental care be provided as soon as possible, and did not

14   provide or make available prompt emergency dental care; and (3) Defendant Winslow

15   refused to provide adequate and specialized dental care for budgetary reasons.

16       2.    Motion to Dismiss

17       In addition to moving for summary judgment with respect to Plaintiff's medical

18   claim Defendants move to dismiss the claim on the ground that Plaintiff has failed to

19   exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  The Prison

20   Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action

21   shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

22   Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

23   such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

24       The State of California provides its inmates and parolees the right to appeal

25

26       [2]Plaintiff also brings his claim under the Due Process Clause of the Fourteenth
     Amendment.  Because Plaintiff is a convicted prisoner, however, the claim must be brought
27   under the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Accordingly,
     Plaintiff's due process claim is DISMISSED.

28
     Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
     Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
     P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1   administratively "any departmental decision, action, condition or policy perceived by

2   those individuals as adversely affecting their welfare."  CCR§ 3084.1(a).  In order to

3   exhaust available administrative remedies within this system, a prisoner must proceed

4   through several levels of appeal: (1) informal resolution, (2) formal written appeal on a

5   CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee,

6   and (4) third level appeal to the Director of the California Department of Corrections.  Id.

7   § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  This satisfies the

8   administrative remedies exhaustion requirement under § 1997e(a).  Id. at 1237-38.

9        It is undisputed that Plaintiff filed administrative appeals regarding inadequate

10   dental care through all levels of review.  What is disputed is the nature of the appeals and

11   whether they addressed the issues raised in the present action.  The Court has reviewed

12   Plaintiff's administrative appeals and the responses thereto, and has compared them to the

13   medical claims he raises in this action.  The Court concludes that Plaintiff has exhausted

14   his administrative remedies with respect to his medical claims.  Accordingly, Defendants'

15   motion to dismiss for failure to exhaust is DENIED.

16        3.    Applicable Law

17        Deliberate indifference to serious medical needs violates the Eighth Amendment's

18   proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97,

19   104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other

20   grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

21   banc); see also Hunt v. Dental Dep't , 865 F.2d 198, 200 (9th Cir. 1989) (serious medical

22   needs can include serious dental needs).  Whether the Eighth Amendment has been

23   violated in a particular situation involves an examination of two elements: the seriousness

24   of the prisoner's medical need and the nature of the defendant's response to that need.  See

25   McGuckin, 974 F.2d at 1059.

26        A serious medical need exists if the failure to treat a prisoner's condition could

27   result in further significant injury or the "unnecessary and wanton infliction of pain."  Id.

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK
24

1  (citing Estelle, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or

2  patient would find important and worthy of comment or treatment, the presence of a

3  medical condition that significantly affects an individual's daily activities, or the existence

4  of chronic and substantial pain are examples of indications that a prisoner has a serious

5  need for medical treatment.  Id. at 1059-60.

6       A prison official is deliberately indifferent if he knows that a prisoner faces a

7  substantial risk of serious harm and disregards that risk by failing to take reasonable steps

8  to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  In order for deliberate

9  indifference to be established, therefore, there must be a purposeful act or failure to act on

10  the part of the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060; Shapley

11  v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

12      4.   Analysis

13         a.   Defendant McLoughlin

14       Plaintiff alleges that Defendant McLoughlin's delay in responding to his first

15  request for dental care amounts to deliberate indifference.  This claim is without merit.  It

16  is undisputed that when Plaintiff sent in his first sick call slip some time around April 5,

17  2003 he stated that he had lost a filling but was not in pain.  And it is undisputed that

18  upon receiving this request for care Defendant McLoughlin scheduled Plaintiff for

19  routine dental treatment.  It is also undisputed that, between the time Plaintiff filed his

20  first request for care in April of 2003 and his first level appeal on June 13, 2003, he did

21  not make further facts known to Defendant McLoughlin which would have led her to

22  infer that he was suffering from a serious medical need.  Even when viewed in the light

23  most favorable to him, the facts alleged by Plaintiff simply cannot support a finding that

24  he was suffering from a serious medical need when he first requested dental care for a

25  lost filling, that Defendant McLoughlin knew or should have known that a serious

26  medical need existed at the time of Plaintiff's first or second requests, or that she acted

27  with deliberate indifference to his serious medical needs.  Delay in providing a prisoner

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1    with dental treatment, standing alone, does not constitute an Eighth Amendment

2    violation.  Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

3        Plaintiff also alleges that after he made clear in his first level appeal that he was in

4    pain Defendant McLoughlin still did not arrange to provide him with immediate

5    treatment, as evidenced by her unwillingness to allow him to be seen by a dentist for an

6    unscheduled visit.  This claim, too, is without merit.  Within five days after Plaintiff filed

7    his first level appeal he was seen by Defendant Spencer.  In the interim, Defendant

8    McLoughlin, a dental assistant, was under no obligation to allow Plaintiff to be seen

9    without an appointment.  Her refusal to do so does not amount to deliberate indifference,

10   especially where Plaintiff has not demonstrated that he was suffering from a problem so

11   severe that Defendant McLoughlin's actions caused him significant harm.  See id.

12       For these reasons, Defendant McLoughlin's motion for summary judgment is

13   GRANTED, and Plaintiff's cross-motion for summary judgment is DENIED.

14                b.    Defendant Spencer

15       Plaintiff alleges that Defendant Spencer acted with deliberate indifference because

16   he acknowledged at his June 20, 2003 meeting with Plaintiff that periodontal disease is

17   serious and requires specialized care but also refused Plaintiff's request for such care

18   because of budgetary concerns which did not allow for adequate staffing and treatment

19   methods at PBSP.

20       The failure to provide treatment because of a tight budget can amount to deliberate

21   indifference.  See Jones v. Johnson, 781 F.2d at 769, 771 (9th Cir. 1986).  Here, however,

22   Defendant Spencer did not fail to treat Plaintiff.  The undisputed facts show that

23   Defendant Spencer was not employed at PBSP until 2003, and that he first saw Plaintiff

24   in the cell pod on February 28, 2003, when he responded to a request for services form.

25   Defendant Spencer noted that Plaintiff had pain, swelling and redness, and diagnosed a

26   dental abscess.  He gave Plaintiff antibiotics and Motrin and scheduled him for a dental

27   appointment.  (Defs.' Ex. A, AGO 0043.)  On March 3, 2003 Defendant Spencer

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK
26

extracted Plaintiff's number twelve tooth because of advanced periodontitis. (Defs.' Ex. A, AGO 0041.) On March 21, 2003 Plaintiff was seen by Dr. Hechanova, who extracted Plaintiff's number six tooth, also because of advanced periodontitis. (Defs.' Ex. A, AGO 0040.) On June 19, 2003 Plaintiff had his filling replaced. On June 20, 2003 Plaintiff alleges he spoke to Defendant Spencer about his ongoing treatment concerns. Plaintiff was not seen for dental care again until May 12, 2004, on which date Defendant Spencer advised Plaintiff that he needed to have his number five, seven, eight and nine teeth extracted. Plaintiff refused. The next day, Plaintiff received a full-mouth scaling and a prescription for vitamins C and D and calcium supplements. He also received a periodontal charting. (Defs.' Ex. A, AGO 0037-0039.)  On August 4, 2004 Defendant Spencer renewed the prescriptions, and on August 17, 2004 Plaintiff's number seven and eight teeth were extracted. (Defs. Ex. A, AGO 0034.)  On August 24, 2004 and October 27, 2004 Plaintiff received dental checkups at which he was advised that his number five and nine teeth needed to be extracted. Those teeth were extracted on December 8, 2004, at which time Plaintiff was fitted for partial dentures. (Decl. of Dr. Spencer in Support of Motion for Summary Judgment at 4:3-5.)

Because the undisputed facts show that Defendant Spencer did not fail to treat Plaintiff, the question becomes whether the treatment he provided was acceptable under Eighth Amendment standards. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). And a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctor chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an

1    excessive risk to plaintiff's health.  Id. at 1058.

2          This Plaintiff has not done.  Even if, as Plaintiff alleges, Defendant Spencer

3    admitted to him that there were more specialized treatments available which PBSP could

4    not provide, this does not amount to a showing that the alternative treatment which

5    Defendant Spencer chose was medically unacceptable or was chosen in conscious

6    disregard of an excessive risk to Plaintiff's health.  The record shows that Defendant

7    Spencer's mode of treatment was to provide prophylactic care in the form of tooth-

8    cleaning and scaling, prescription of dietary supplements, and a special toothbrush; to

9    provide palliative care in the form of antibiotics and Motrin for pain and swelling caused

10   by periodontitis; and to extract teeth when there was extensive bone loss or infection.

11   Although Plaintiff disagrees with the choice of treatment provided, he has not show that

12   such choice amounts to deliberate indifference.  See, e.g., Hallett, 296 F.3d at 746

13   (upholding district court's finding of no Eighth Amendment violation where dentists did

14   not provide routine prophylactic treatment for patients with periodontal disease but could

15   refer them to a hygienist for tooth-cleaning and/or scaling in their discretion).

16         Even when Plaintiff's allegations are viewed in the light most favorable to him,

17   they do not raise a triable issue of fact with respect to whether Defendant Spencer acted

18   with deliberate indifference to Plaintiff's  serious medical needs.  Accordingly, Defendant

19   Spencer's motion for summary judgment is GRANTED, and Plaintiff's cross-motion for

20   summary judgment is DENIED.

21               c.    Defendant Winslow

22         Plaintiff attempts to hold Defendant Winslow liable for the same failings attributed

23   to Defendant Spencer, that is, for refusing to provide adequate and specialized dental care

24   at PBSP for budgetary reasons.  However, the Court has found no underlying

25   constitutional violation as the result of alleged inadequate dental treatment.  Thus, there is

26   no ground on which to find Defendant Winslow liable for having violated Plaintiff's

27   constitutional rights.  See Redman, 942 F.2d at 1446.  Accordingly, Defendant Winslow's

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1  motion for summary judgment is GRANTED, and Plaintiff's cross-motion for summary

2  judgment is DENIED.

3  E.       Plaintiff's Pending Motions

4          Plaintiff has moved for an order compelling discovery, for the appointment of

5  counsel, for the appointment of a medical expert, and for a stay of proceedings until

6  discovery matters are resolved.  The Court DENIES these motions.  In ruling on

7  Plaintiff's claims the Court has construed all facts in the light most favorable to Plaintiff

8  and the discovery he seeks would have no bearing on the Court's legal rulings.  Nor is

9  Plaintiff entitled to the appointment of counsel or a medical expert.  Because of this, a

10 stay of proceedings is not required.

11                                      **CONCLUSION**

12         For the foregoing reasons the Court orders as follows:

13         1.  Defendants' motion to dismiss for failure to exhaust administrative remedies is

14 DENIED.  (Docket no. 30.)

15         2.  Defendants' motion for summary judgment is GRANTED.  (Docket no. 30.)

16         3.  Plaintiff's cross-motion for summary judgment is DENIED.  (Docket no. 36.)

17         4.  Plaintiff's motions to compel discovery, for the appointment of counsel, for the

18 appointment of a medical expert, and to stay proceedings are DENIED.  (Docket nos. 38,

19 40, 42, 44.)

20         The Clerk of the Court shall enter judgment and close the file.

21         IT IS SO ORDERED.

22

23 DATED: _____9/25/06_____              /s/jeremy fogel_____

24                                       JEREMY FOGEL
                                        United States District Judge

25

26

27

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK

1    On _____, a copy of this order was mailed to
the following:

2

3    Julius Roy Bragg
D-35666
4    Pelican Bay State Prison
P.O. Box 7500/D1201L
5    Crescent City, CA  95531

6

Trace O. Maiorino
7    Deputy Attorney General
455 Golden Gate Ave.
8    Suite 11000
San Francisco, CA 94102-7004
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Defendants' Motion to Dismiss, Granting Defendants' Motion for Summary Judgment, Denying
Plaintiff's Cross-Motion for Summary Judgment, Addressing Pending Motions
P:\pro-se\sj.jf\cr.02\Bragg3908.MSJ.Grant.ECK